Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 08 2014, 8:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ZACHARY A. WITTE**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FREDERICK L. FREEMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1311-CR-455 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1307-FB-132

**October 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Frederick L. Freeman appeals his convictions for robbery as a class B felony and pointing a firearm as a class D felony. Freeman raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

FACTS AND PROCEDURAL HISTORY

Sometime before 1:00 a.m. on July 23, 2013, Tyler Zoda, Devon Stewart, and Corey Clemmer were eating pizza while sitting on the tailgate of Stewart's truck in a parking lot adjacent to a gas station and convenience store in Allen County, Indiana. Zoda went to the convenience store to purchase a drink. A short time after Zoda had entered the convenience store, Stewart and Clemmer noticed a red Ford Explorer drive past them several times within a short time period. The vehicle had dark tinted windows and was "really loud." Transcript at 83. The second time Stewart and Clemmer saw the Ford Explorer, it was driving faster than the first time they saw it. They saw the vehicle a "third time behind the carwash at the gas station and it like hit this bump, it was going pretty fast at that point." Id. at 70. The last time they saw the vehicle is when it "flew around the backside of the carwash." Id. at 72. They believed the vehicle was circling the area or making laps.

After Zoda entered the store, a man wearing a hat, a scarf or covering over the lower portion of his face so that only his eyes were visible, and gloves entered the store, pointed a handgun at the store attendant, Dalvir Singh, and told him to give him the money. The man then pointed the gun at Zoda and told him to tell the attendant to give him the money. Singh lifted the money tray out of the cash register and placed it on the counter, and the man took the tray and fled with it in his hand. The cash tray contained

2

three to four hundred dollars. A call was placed to police dispatch at 12:49:27 a.m., and the initial report from dispatch to police occurred at 12:50:19 a.m.

Police arrived at the store, and Fort Wayne Police Officer Craig Fairchild spoke with Zoda, viewed a surveillance video depicting the robbery, and noted the person who committed the robbery was wearing gloves. Officer Robert Warstler spoke with Clemmer and obtained a description of the red Ford Explorer, and that information was communicated to dispatch to alert other police units in the area to be aware of the vehicle. At 12:57:03 a.m., information was provided by dispatch that a red Ford Explorer had been circling the convenience store prior to the robbery. At approximately 12:57:12 a.m., Fort Wayne Police Officer Robert Hollo observed a red Ford Explorer matching the description provided by dispatch at a location approximately two miles from the convenience store.

Another police vehicle arrived and followed Officer Hollo's vehicle, and at 12:58:50 a.m. Officer Hollo activated his emergency lights to initiate a stop of the Ford Explorer. The Explorer immediately turned onto another road and accelerated at a high rate of speed, and Officer Hollo activated his vehicle's siren and pursued the Explorer at speeds of about ninety to one hundred miles per hour. The Explorer entered a parking lot and slowed down, and Freeman, who had been seated in the front passenger seat, opened the door and attempted to exit the moving vehicle. Officer Hollo noticed that Freeman appeared to be stuck in a seatbelt and observed Freeman's "foot dragging on the pavement and his shoe and sock fling off." Id. at 100. Freeman was eventually able to exit the vehicle and began to run away on foot, and Officer Hollo provided information to

3

other officers that Freeman was running and a description of Freeman and his clothing. The vehicular pursuit ended at 1:00:45 a.m. The driver of the Ford Explorer also began to run, but he fell and was taken into custody.

As police searched for Freeman, a police dog alerted to a row of bushes near a house less than one hundred yards from the Explorer, and they discovered Freeman in the bushes. He was taken into custody at about 1:18 a.m. The police recovered $198 in currency from underneath Freeman in the bushes. Police also discovered two baseball caps, two pairs of gloves, and a sweatshirt in the Ford Explorer, but did not find a handgun or cash drawer in the vehicle.

Zoda and Singh were transported from the convenience store to the location where Freeman and the driver of the Ford Explorer were in police custody. Zoda stated that Freeman "could possibly have been the suspect he saw" but did not feel sure enough to make an identification. Id. at 137. Almost immediately after observing Freeman's face, Singh stated in broken English: "That's him, I'm a hundred percent sure." Id. at 138.

On July 29, 2013, the State charged Freeman with Count I, robbery as a class B felony alleging that Freeman took property from Singh by threatening the use of force; Count II, pointing a firearm as a class D felony alleging that Freeman pointed a firearm at Zoda; and Count III, being a habitual offender. A jury trial was held on October 17, 2013, at which the State presented photographic evidence and the testimony of, among others, Singh,[1] Zoda, Stewart, Clemmer, Officer Hollo, and several other police officers.

---

[1] The court recognized that Singh understood some English and asked that Singh look to the interpreter if needed during his testimony. At one point, Freeman's counsel asked a detective witness if there was a Punjabi interpreter with him at the time Singh positively identified Freeman, and the detective indicated there was not.

4

During his testimony, Singh indicated that he was taken to Freeman's location and, when asked if he identified for police the person who robbed him, answered affirmatively. When asked if he saw the person who robbed him in the courtroom, Singh stated that he wanted Freeman to stand up, the court had Freeman stand, Freeman complied with the request, and Singh stated "no." Id. at 42. The jury found Freeman guilty on each of the alleged counts. The court sentenced Freeman to consecutive terms of fifteen years for his conviction under Count I and two years for his conviction under Count II, and enhanced Count I by thirty years for his adjudication as an habitual offender, resulting in an aggregate sentence of forty-seven years.

## DISCUSSION

The issue is whether the evidence was sufficient to sustain Freeman's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

Freeman contends there was insufficient evidence to show he was one of the persons who committed the crimes. Specifically, he argues that Singh and Zoda were unable to identify him at the time of the robbery or at trial. He also notes that Zoda indicated he was in shock when the robbery occurred and was not sure whether the assailant was pointing the gun at him or using it to motion him over to the counter.

5

The State maintains that Freeman does not claim that the crimes did not occur or that the evidence is not sufficient to prove all necessary elements of the crimes, but rather he asserts only that the evidence was insufficient to show he was one of the persons who committed the offenses. The State argues that, approximately one hour after the robbery, Singh "almost immediately identified [Freeman] as the man who robbed him earlier that morning." Appellee's Brief at 9. The State argues that, while Singh did not identify Freeman at trial as the person who robbed him, "[t]his does not render the identification evidence insufficient, rather, it simply provides an inconsistency that was for the jury to reconcile." Id. The State also argues that the officers' observation of the Explorer within minutes of the call to police, the subsequent pursuit of the vehicle, the apprehension of Freeman, evidence of flight, and the evidence of the caps, gloves, and a dark sweatshirt recovered from the Explorer seen circling the area of the store, all support the jury's determination that Freeman committed the offenses.

To the extent Freeman argues the evidence was insufficient to establish he pointed a firearm at Zoda, on direct examination Zoda testified that the robber "pointed the gun over at [Singh] and started telling him to give him the money and then he looked over at me and pointed the gun at me and told me to put my hands up . . . ." Transcript at 46. On cross-examination, when asked "did he point [the gun] at you or wave you over with it," Zoda answered "I can't remember. I was kind of in shock so, I mean I know it was pointed at me for just a second . . . ." Id. at 50. We conclude evidence of probative value exists from which the jury could have found that Freeman pointed a firearm at Zoda.

6

With respect to Freeman's argument that the evidence was insufficient to show he committed the crimes, we note identification testimony need not necessarily be unequivocal to sustain a conviction. Heeter v. State, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. Gleaves v. State, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007) (citing Badelle v. State, 754 N.E.2d 510 (Ind. Ct. App. 2001), trans. denied). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Id. Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. Id.

Here, Singh and Zoda testified that the perpetrator of the offenses was wearing a hat and a covering over the lower portion of his face so that only his eyes were visible. After police apprehended Freeman, they transported Zoda and Singh to the area, and, while Zoda believed Freeman could possibly have been the robber, he did not feel sure. Singh observed Freeman's face and almost immediately stated that Freeman was the person who robbed him and that he was "a hundred percent sure." Transcript at 138. At trial, Singh testified through an interpreter, and when asked if he saw the person who robbed him, Singh asked for Freeman to stand and, when Freeman complied, stated "no."

Id. at 42. Zoda testified that he was unable to identify anyone because the man who robbed the store was wearing a hat which was pulled down and a covering over his face.

Identity may be established entirely by circumstantial evidence, see Bustamante, 557 N.E.2d at 1317, and we note that the fact Zoda could not positively identify Freeman or the fact Singh did not positively identify him at trial do not require reversal. It was not unreasonable for the jury to believe Freeman was the person who robbed Singh at the convenience store based upon Singh's positive identification of Freeman immediately following the robbery and the other evidence and testimony presented by the State. The police were contacted after Freeman left the store and arrived at the scene within minutes of the call. Stewart and Clemmer noticed the red Ford Explorer circle the area or making laps multiple times and that the vehicle was driving quickly. Within seconds of the time dispatch provided information to officers regarding the Ford Explorer, Officer Hollo observed the vehicle two miles from the store. After a high-speed vehicle pursuit, police were able to apprehend Freeman and the driver. Freeman had been seated in the front passenger seat of the Explorer, ran on foot from the police, and was discovered about eighteen minutes later in a row of bushes less than one hundred yards from the vehicle with $198 underneath him. Police recovered two baseball caps, two pairs of gloves, and a sweatshirt from the vehicle.

Based upon the record, we conclude that the inferences made by the jury were not unreasonable and that evidence of probative value exists from which the jury could have found beyond a reasonable doubt that Freeman committed the charged offenses. See Brink v. State, 837 N.E.2d 192, 198 (Ind. Ct. App. 2005) (noting the evidence was

8

subject to conflicting inferences and holding that the jury could have inferred that the defendant parked in a bank parking lot, walked through a wheat field, broke into a building and stole cash, walked back through the field, and drove away, that the inferences made by the jury were not unreasonable based on the evidence, and that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt of burglary and theft) (citing Lacey v. State, 755 N.E.2d 576, 578 (Ind. 2001) (holding that the evidence was sufficient to sustain the defendant's convictions based upon circumstantial evidence that he was found near the victim's apartment apparently attempting to conceal himself among the vegetation and in close proximity to items used by the intruders)), trans. denied.

## CONCLUSION

For the foregoing reasons, we affirm Freeman's convictions for robbery as a class B felony and pointing a firearm as a class D felony.

Affirmed.

BARNES, J., and BRADFORD, J., concur.